784 P.2d 297

**STATE of Arizona, Appellee,**

v.

**Christine GARCIA, Appellant.**

**No. 2 CA–CR 89–0288.**

Court of Appeals of Arizona, Division 2, Department A.

Dec. 12, 1989.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Eric A. Bryant, Phoenix, for appellee.

Jim D. Himelic, P.C., Tucson, for appellant.

## OPINION

ROLL, Presiding Judge.

Defendant Christine Garcia appeals from her conviction for possession of cocaine. For the reasons set forth below, we affirm.

## FACTS

In the early morning hours of December 11, 1987, Christine Garcia was a passenger in a vehicle operated by an allegedly intoxicated driver. The vehicle was stopped by Tucson Police Department Officer Laura Ramsey, who had observed it proceeding in the wrong direction on a one-way Tucson street. Because of the presence of the passenger, Officer Ramsey requested a back-up unit so that she could direct her full attention toward the driver. The back-up officer was Kevin Lane.

While police officers proceeded with the arrest of the driver for driving under the influence (DUI), they made certain observations about Garcia. They concluded that she was also intoxicated. At one point, she appeared to be asleep. When questioned as to her location, she stated that she believed that she was in Phoenix rather than Tucson. Based upon Garcia's condition and the fact that the driver of the vehicle in which she had been riding was placed under arrest for DUI, Officer Lane asked her if she wanted a ride home, to which she consented.

Before Officer Lane permitted Garcia to enter his vehicle, he conducted a pat-down search. The officer testified that the pat-down was conducted because Garcia was intoxicated, he did not know her, and he was about to transport her in a police vehicle for approximately four miles. This search disclosed the presence of a hard item in her front pants pocket. The officer feared that the hard item could be a razor, pen, or other item which could be used as a weapon. At the request of the officer, Garcia removed some coins, some paper money, and two pieces of paper. One of the two pieces of paper was crumbled up while the other paper was neatly folded into the shape of a very small envelope. The officer asked Garcia what was inside the envelope and she replied "aspirin." The officer's training and experience led him to conclude that the small envelope contained drugs. He then opened the envelope and observed a powdery white substance which he concluded was cocaine.[1] Garcia was then placed under arrest. Chemical analysis later determined that the substance consisted of 135 milligrams of cocaine.

## PROCEDURAL HISTORY

Christine Garcia was indicted for one count of possession of cocaine. Prior to trial, she moved to suppress her statements and the physical evidence seized from her person. During argument on the motions, the following discussion ensued:

[Defense Counsel:] Even if you found again that the pat down was proper, he totally went beyond the scope of the pat down. Everything was removed. There was nothing that she could have done to take any coin and throw it at him or to do anything else....

THE COURT: You don't think seeing the packet folded in the manner that

1. The officer also looked inside the crumbled up paper but found nothing.

narcotics are known to be folded in would be enough for him to open the packet?

[Defense Counsel:] Well, no, I don't. And the reason for that is—also in looking at *People v. Dandrea,* [736 P.2d 1211 (Colo.1987)] the officers in that case stated it could have been a razor blade; it could have been anything; it could have been some illicit substance. They didn't know what it was. It could have been anything.

THE COURT: That could be a weapon so I'm not concerned about that. But something is produced out of the [defendant's] pocket which sure looks like what the officer apparently has seen many times or at least heard of many times, and you say that all he can do is set that aside, put it out of the way of the defendant without inspecting it?

The motions to suppress were denied. A jury found Garcia guilty as charged and she was placed on three years' probation.

### ISSUES ON APPEAL

On appeal, Garcia argues that (1) the physical evidence was the product of an unlawful search; (2) her statements to the police were involuntary; and (3) her motion for directed verdict should have been granted because she was unable to form the requisite intent to knowingly possess cocaine based upon her intoxicated condition.

### *Admissibility of Physical Evidence*

■ Our standard of review for denial of a motion to suppress evidence is abuse of discretion. *State v. Carter,* 145 Ariz. 101, 110, 700 P.2d 488, 497 (1985). However, questions of law are reviewed *de novo. Tovrea Land & Cattle Co. v. Linsenmeyer,* 100 Ariz. 107, 114, 412 P.2d 47, 52 (1966).

■ The state maintains that the pat-down search was a permissible method for the officer to protect himself from attack while driving Garcia home in his patrol car. Once the officer observed the uniquely-wrapped envelope in plain view, he had probable cause to seize and inspect it.

In *State v. Smith,* 112 Ariz. 531, 534, 544 P.2d 213, 216 (1975), the supreme court held that whenever a person is to be transported in a police vehicle, a pat-down search is reasonable, proper, and lawful. Garcia, however, suggests that once the officer conducted the pat-down search and ascertained that Garcia had no weapons, he was not permitted to conduct the follow-up seizure and inspection of the envelope, relying upon *People v. Dandrea,* 736 P.2d at 1218.

In *Dandrea,* the defendant was also a passenger in a vehicle operated by a drunk driver and, like the driver, was intoxicated. The officer decided to take the defendant into civil custody and drive him to an alcoholic reception center. Before transporting the defendant, the officer conducted a pat-down search. During the search he felt an object in the defendant's coat and asked him to remove it. When the object was produced by Dandrea, the officer observed it to be a small folded paper. The officer feared that the paper contained a razor blade and opened it up. Inside the paper he found a small quantity of cocaine. *Id.* at 1212–13. A majority of the Colorado Supreme Court concluded that although the pat-down search was permissible, because the officer feared that the paper contained a weapon, he could have protected himself adequately by isolating the paper until the defendant was released. *Id.* at 1218.

Although superficially similar, the situation presented in *Dandrea* differs from the instant case. In *Dandrea,* the police officer thought that the folded paper might contain a razor blade. Here, the officer had probable cause to believe that the envelope contained illegal drugs.

■ The plain view doctrine supports the warrantless seizure of private possessions by police officers if three requirements are satisfied: (1) the officer must lawfully make an initial intrusion; (2) the officer must inadvertently discover the incriminating evidence; and (3) it must be immediately apparent to the officer that the item observed may be evidence of a crime, contraband, or otherwise subject to seizure.

*Texas v. Brown,* 460 U.S. 730, 736–37, 103 S.Ct. 1535, 1540–41, 75 L.Ed.2d 502, 510 (1983).

In this case, all three requirements are met. The initial pat-down search was lawful. *State v. Smith, supra.* The search revealed a hard object which could have been a weapon. The officer did not know in advance that Garcia would have evidence in her pocket, therefore his discovery of the incriminating evidence was inadvertent. Finally, it was apparent to the officer that the envelope contained drugs. Although it is true that Officer Lane could not have known for certain that the uniquely-folded envelope contained cocaine, in order to conduct a search and seizure based upon plain view, he need only have had probable cause. *Brown,* 460 U.S. at 742–43, 103 S.Ct. at 1543, 75 L.Ed.2d at 514; *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987).

The trial court did not abuse its discretion in denying defendant's motion to suppress evidence.

### Statements

■ Garcia next argues that the evidence established that Garcia was extremely intoxicated. Accordingly, Garcia argues that her statement was involuntary.

■ The state must prove by a preponderance of the evidence that a defendant's statements were given freely and voluntarily. Absent clear and manifest error, the trial court's determination of voluntariness will not be disturbed on appeal. *State v. Griffin,* 148 Ariz. 82, 85, 713 P.2d 283, 286 (1986).

■ Statements made at a time when a defendant is so intoxicated as to be unable to understand the meaning of the statements are involuntary. *State v. Porter,* 122 Ariz. 453, 456, 595 P.2d 998, 1001 (1979). The mere fact of intoxication does not render a statement inadmissible. *State v. Laffoon,* 125 Ariz. 484, 487, 610 P.2d 1045, 1049 (1980). The trial court must

consider the totality of the circumstances. *Id.*[2]

The trial court had an opportunity to observe the demeanor of witnesses. The trial court had before it evidence that the defendant furnished Officer Lane her Tucson address. The trial court could even have concluded that the defendant's statement that the envelope contained aspirin rather than cocaine demonstrated Garcia's understanding of the meaning of her statement and awareness of her predicament.

We find no error on this ground.

### *Denial of Directed Verdict*

■ In reviewing a denial of directed verdict, this court must view the facts in the light most strongly in favor of upholding the verdict. *State v. Murray,* 782 P.2d 329, 331 (Ct.App.1989).

■ Garcia argues that the evidence showed that because of her intoxication, she was unable to form the requisite intent of knowingly possessing cocaine. However, voluntary intoxication is normally not a defense to possession of drugs. *State v. Derosier,* 133 Ariz. 154, 156, 650 P.2d 456, 458 (1982). Viewing the evidence in the light most favorable to the state as we are required to do, the jury could reasonably have concluded that despite her intoxicated condition Garcia knowingly possessed cocaine.

We have searched the record for fundamental error and have found none. We affirm.

HOWARD and HATHAWAY, JJ., concur.

---

**2.** Garcia's ability to understand and waive her *Miranda* rights is not an issue because her statement that the envelope contained aspirin was made before the cocaine was discovered.