IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

OCT 28 2010

COURT OF APPEALS
DIVISION TWO

| | |
|---|---|
| THE STATE OF ARIZONA, | ) |
| | ) |
| Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| LANDO ONASSIS AHUMADA, | ) |
| | ) |
| Appellant. | ) |
| | ) |

2 CA-CR 2010-0093
DEPARTMENT B

O P I N I O N

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20092638001

Honorable John S. Leonardo, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and Alan L. Amann                     Tucson
                                                 Attorneys for Appellee


Robert J. Hirsh, Pima County Public Defender
  By David J. Euchner                                      Tucson
                                                Attorneys for Appellant


E C K E R S T R O M, Judge.

¶1        After a jury trial, appellant Lando Ahumada was convicted of possessing both the narcotic drug cocaine and drug paraphernalia.  He was sentenced to substantially mitigated, concurrent prison terms of 2.25 and .75 years.  He argues the trial court should have granted his motion to suppress the cocaine found in his pocket because the officer's search exceeded the scope of the consent Ahumada had given.  He also argues the search was unlawful under the "plain-feel" doctrine.  Because we conclude the evidence was lawfully seized under that doctrine, we affirm the trial court's ruling and, in turn, Ahumada's convictions and sentences.

**Factual and Procedural Background**

¶2        When reviewing the denial of a motion to suppress evidence, we consider only the evidence presented at the suppression hearing, viewing that evidence in the light most favorable to upholding the trial court's ruling.  *State v. Teagle*, 217 Ariz. 17, ¶ 2, 170 P.3d 266, 269 (App. 2007).  Tohono O'Odham police officer Paul South testified he was called to the Desert Diamond Casino to respond to a "probable drug transaction."  There, he viewed a surveillance video in which a person he later identified as Ahumada approached a man sitting at the casino bar.  The men spoke briefly and looked around, "making sure that no one was watching them."  Then the seated man "handed something up" to Ahumada, who placed the item in his pocket.

¶3        South found Ahumada near the slot machines, identified himself, and asked Ahumada his name and whether "he had anything illegal on him."  Ahumada said he did not.  South then asked Ahumada to empty his pockets, which Ahumada appeared to do.  South next asked if he could conduct a "pat down," to which Ahumada agreed.  South felt

an object in Ahumada's right pocket and asked what it was. Ahumada said he did not know, and South reached in and pulled out "two small plastic bindles with a white rocky substance in them."

¶4 The trial court denied Ahumada's motion to suppress, finding it was "objectively reasonable" for the officer to believe Ahumada's consent to the pat-down included the inside of his pants pockets. The evidence was admitted at trial, Ahumada was found guilty, and this appeal followed his conviction and sentencing.

**Discussion**

¶5 Ahumada argues the trial court abused its discretion when it denied his motion to suppress the evidence found in his pocket. Specifically, he contends the officer exceeded the scope of Ahumada's consent to a pat-down when he reached into Ahumada's pocket. When reviewing a trial court's ruling on a motion to suppress, "we evaluate discretionary issues for an abuse of discretion but review legal and constitutional issues de novo." *State v. Huerta*, 223 Ariz. 424, ¶ 4, 224 P.3d 240, 242 (App. 2010). We will uphold a trial court's ruling on a motion to suppress if it is correct for any reason. *State v. Cañez*, 202 Ariz. 133, ¶ 51, 42 P.3d 564, 582 (2002).

¶6 "The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures." *State v. Jones*, 188 Ariz. 388, 395, 937 P.2d 310, 317 (1997). Generally, searching a person without a warrant supported by probable cause is unreasonable. *State v. Gant*, 216 Ariz. 1, ¶ 8, 162 P.3d 640, 642 (2007), *aff'd*, *Arizona v. Gant*, ___ U.S. ___, 129 S. Ct. 1710 (2009). However, "'a few specifically established and well-delineated exceptions'" exist. *Id.*, *quoting Katz v. United States*,

3

389 U.S. 347, 357 (1967). Consent, voluntarily given, is one of those exceptions. *State v. Davolt*, 207 Ariz. 191, ¶ 29, 84 P.3d 456, 468 (2004). Here, Ahumada does not contend his consent to the pat-down was involuntary; rather, he argues the officer exceeded the scope of that consent.

Scope of Consent

**¶7** "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *accord State v. Swanson*, 172 Ariz. 579, 584 n.5, 838 P.2d 1340, 1345 n.5 (App. 1992). Here, the trial court found that a reasonable person would have understood Ahumada's consent to the pat-down to include consent to search his pockets. The court concluded Officer South's previous request for Ahumada to empty his pockets had "identified the object of the search." *Cf. United States v. Ross*, 456 U.S. 798, 824 (1982) (holding scope of warrantless search of automobile "defined by the object of the search and the places in which there is probable cause to believe that it may be found"). It also found Ahumada had not objected to the search of his pocket and concluded this circumstance tended to show it was reasonable for South to believe Ahumada had consented. *See United States v. Jones*, 356 F.3d 529, 534 (4th Cir. 2004) ("[A] suspect's failure to object (or withdraw his consent) when an officer exceeds limits allegedly set by the suspect is a strong indicator that the search was within the proper bounds of the consent search.").

4

¶8 Ahumada counters that a pat-down is reasonably understood to involve the passing of an officer's hands over the outside of a person's clothing only, commonly to determine whether the person is carrying a weapon. This understanding of a "pat down" is consistent with our Supreme Court's use of the term—and the limitations on that type of search—in the context of investigatory detentions conducted pursuant to *Terry v. Ohio*, 392 U.S. 1, 16 (1968).

¶9 *Terry* held that, "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may "conduct a carefully limited search of the outer clothing of such person[] in an attempt to discover weapons [that] might be used to assault him." *Id.* at 24, 30. Since *Terry*, the Court has emphasized that "'[t]he purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.'" *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993), *quoting Adams v. Williams*, 407 U.S. 143, 146 (1972); *see also United States v. Casado*, 303 F.3d 440, 447 (2d Cir. 2002) (officer exceeded scope of *Terry* by reaching inside suspect's pocket and removing all items without first doing pat-down for weapons). And lower courts repeatedly have held that a pat-down search does not lawfully include reaching into the pockets of clothing to secure items that could not possibly have resembled weapons during the pat-down. *See, e.g.*, *United States v. Miles*, 247 F.3d 1009, 1014-15 (9th Cir. 2001) (officer's manipulation of box in suspect's pocket exceeded scope of *Terry* pat-down when object "could not possibly be a weapon"); *State v. Valle*, 196 Ariz. 324, ¶ 12, 996 P.2d 125, 129

5

(App. 2000) (search of pocket exceeded scope of *Terry* frisk when officer testified he had not believed object was weapon); *Davis v. State*, 829 S.W.2d 218, 219, 221 (Tex. Crim. App. 1992) (search of matchbox found in suspect's coat pocket during pat-down exceeded scope of weapons search under *Terry* because "unreasonable for two armed police officers to fear a razor blade that might be contained in a matchbox").

¶10         Although the pat-down search here was not conducted pursuant to *Terry* and therefore was not necessarily subject to the constraints placed upon such searches in that case and its progeny, we cannot address the scope of consent to a pat-down search without considering the objectively reasonable understandings of its nature, purpose, and extent. *See Jimeno*, 500 U.S. at 251. We think it relevant that, in the most common context for pat-down searches—namely, those conducted by officers during investigatory encounters—a pat-down is understood by our jurisprudence, and presumably therefore by our officers, to be a search for weapons, conducted for officer safety, that does not include searching the inside of the suspect's pockets for other contraband.

¶11         Nor, in our view, does South's previous focus on the contents of Ahumada's pockets necessarily define the scope of the pat-down later requested. While South's request that Ahumada empty his pockets undoubtedly conveyed the officer's interest in their contents, Ahumada could have reasonably understood that request, like the request to conduct a pat-down, as an effort by South to satisfy himself that Ahumada was unarmed. And Ahumada's strategic decision to empty his pockets only partially, presumably so that he would not expose the cocaine, tends to contradict the theory that he

6

implicitly was consenting to the full search of the inside of his pockets when he agreed to the pat-down moments later.

¶12 The trial court cited *Ross* for the proposition that the scope of a search can be defined by the apparent object of the search, a principle also articulated in *Jimeno*. "The scope of a search is generally defined by its expressed object." 500 U.S. at 251; *see also Ross*, 456 U.S. at 824 (holding scope of warrantless search of automobile "defined by the object of the search and the places in which there is probable cause to believe that it may be found").[1] But in *Jimeno*, the officer expressly articulated to the defendant that the object of the search was narcotics, 500 U.S. at 251, and in *Ross*, the circumstances preceding the search made its object clear. 456 U.S. at 800-01. Here, by contrast, South asked only if Ahumada possessed anything illegal. And, as discussed above, the fact that South previously had asked Ahumada to empty his pockets did not clarify the officer's goal in conducting the pat-down thereafter. Thus, in our view, South's previous request that Ahumada empty his pockets did little to objectively clarify the scope of the consent Ahumada provided when he agreed to the pat-down.

¶13 Although no Arizona case has squarely addressed the scope of consent to a non-*Terry* pat-down, cases with similar facts from other jurisdictions are split as to

---

[1]Since then, the Court has not expressly extended the principle to searches of persons and one commentator suggests it ought not do so. *See* 4 Wayne R. LaFave, *Search and Seizure* § 8.1(c), at 28 (4th ed. 2004) (stating the "*Jimeno* principle . . . cannot be literally applied to consent searches of the person"). *But see Safford Unified Sch. Dist. No. 1 v. Redding*, ___ U.S. ___, 129 S. Ct. 2633, 2649 (2009) (Thomas, J., concurring in part and dissenting in part) (noting *Ross* would apply to search of student); *Pinkney v. State*, 742 N.E.2d 956, 960 (Ind. Ct. App. 2001) (citing *Jimeno* principle to support officer's search of pocket after suspect consented "to search his person for drugs and weapons," concluding pocket "might reasonably contain those specified items").

whether a search into a suspect's pocket exceeds the scope of consent to a pat-down. *Compare United States v. Smith*, 649 F.2d 305, 307, 309 (5th Cir. 1981) (when consent to pat-down given to drug enforcement agent, officer "acted well within the scope of a reasonable narcotics pat-down" in removing cocaine from inside pocket of suspect's jacket), *and Aranda v. State*, 486 S.E.2d 379, 382 (Ga. Ct. App. 1997) (consent to pat-down not exceeded by officer's investigation of "suspicious cardboard-like object" under suspect's shirt when "consent given did not restrict the patdown to one for weapons"), *with United States v. Lemons*, 153 F. Supp. 2d 948, 963 (E.D. Wis. 2001) (finding consent to pat-down did not allow for search of pockets because "the ordinary person in either the suspect's or the officer's position would know that a consent to a pat-down means a consent to a *Terry* pat-down search"), *Sanders v. State*, 732 So. 2d 20, 21 (Fla. App. 1999) ("[I]n the absence of additional circumstances which would justify a more complete search, consent to a mere pat down does not include consent to reach into the pockets of a suspect and retrieve the contents."), *State v. Labine*, 733 N.W.2d 265, ¶ 20 (S.D. 2007) (finding officer's reaching into suspect's pockets and removing plastic bag of marijuana exceeded scope of consent for pat-down), *and Royal v. Commonwealth*, 558 S.E.2d 549, 552 (Va. App. 2002) (consent to pat-down search did not give officer permission to search suspect's pockets either at time of pat-down or after temporary recess).

¶14 Here, the trial court found it "a close question" but concluded the state had proven Ahumada had consented to a search of his pocket. We agree it was a close question but would not necessarily reach the same legal conclusion, given that the state

8

had the burden to show the search was within the scope of consent. *See Valle*, 196 Ariz. 324, ¶ 19, 996 P.2d at 131; *see also State v. Adams*, 197 Ariz. 569, ¶ 16, 5 P.3d 903, 906 (App. 2000) (reviewing constitutionality of search de novo). The facts and circumstances of this case appear ambiguous at best as to whether reasonable persons would understand that, in consenting to the pat-down, they were agreeing to an intrusion into their pockets. *See State v. Cañez*, 202 Ariz. 133, ¶ 53, 42 P.3d 564, 582 (2002) (consent to search must be expressed in "unequivocal words or conduct"). But, because Ahumada's consent to the pat-down clearly authorized the officer to feel the presence of the rock-like substance through the outer areas of Ahumada's clothing, and because it was immediately apparent to South that the substance was contraband, we conclude, for the reasons set forth below, the search was lawful under the plain-feel doctrine even in the absence of Ahumada's consent.

Plain Feel

**¶15**　　Under the plain-feel exception to the warrant requirement, which has been likened to the plain-view exception, an officer may reach into a suspect's pocket and seize an item of contraband if the officer "lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).[2] In other words, "[i]n order to seize

---

[2]In *Dickerson*, the evidence was suppressed because the officer manipulated the item in the suspect's pocket before seizing it, thereby subjecting him to an additional search. 508 U.S. at 378. Ahumada argues South manipulated the item before retrieving it, citing the surveillance video that captured the encounter. But the surveillance video shows the encounter from behind and thus does not show South's hands clearly enough to determine whether any manipulation occurred.

9

an item discovered by feel in a pat-down search, the officer must have probable cause to believe that the item is contraband." *In re Pima County Juv. Action No. J-103621-01*, 181 Ariz. 375, 378, 891 P.2d 243, 246 (App. 1995); *see also Texas v. Brown*, 460 U.S. 730, 741-42 (1983) (plurality opinion) (explaining that "immediately apparent" language does not require higher degree of certainty than probable cause); *cf. State v. Garcia*, 162 Ariz. 471, 474, 784 P.2d 297, 300 (App. 1989) (search and seizure based upon plain view required probable cause to believe envelope contained drugs).

¶16 Here, South testified he had seen a surveillance video that showed Ahumada receive something from another man. Ahumada then put that item into his pocket as the two looked around, as if to determine whether anyone was watching— behavior South associated from his training and experience with "drug transactions." Ahumada was then under video surveillance from the time the transaction was recorded until South approached him. South asked Ahumada to empty his pockets, and Ahumada removed everything but the "lump" South felt when he patted him down. When asked by the court if he had "draw[n] any conclusions as to what [he] suspected it might be in the pocket before [he] took the object out," South responded, "[i]llegal drugs," specifically "[c]rack, coke, whatever they can pack up in a rock formation." He also testified that, in a pat-down, the feel of illegal drugs is "very distinct" and that he is able to detect marijuana, powdered cocaine, and rock-shaped drugs by touch.

¶17 Although we acknowledge that rock-like items in a pocket are not necessarily contraband, the circumstances surrounding the encounter here supported South's suspicion that the rock-like substance in Ahumada's pocket was, in all

10

probability, illegal drugs. Ahumada argues these facts did not give South probable cause to perform a further search of his pocket and seize the cocaine. He contends South "did not know what was in the pocket; he suspected drugs, but the contents of the pocket were not 'immediately apparent' to him."[3]

¶18        But probable cause does not require certain knowledge, it requires only facts sufficient to "'warrant a [person] of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime." *Brown*, 460 U.S. at 742, *quoting Carroll v. United States*, 267 U.S. 132, 162 (1925). "A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." *Id.*, *quoting Brinegar v. United States*, 338 U.S. 160, 176 (1949). And, relevant to the determination of probable cause is an officer's factual knowledge based on his law enforcement experience. *See Brown*, 460 U.S. at 742-43 (officer's knowledge "that balloons tied in the manner of the one possessed by Brown were frequently used to carry narcotics" among circumstances supplying probable cause to seize item under plain-view exception).

¶19        Ahumada points to two cases in which this court has concluded the state did not show the officer had probable cause to seize items felt in a pat-down search, *State v. Valle*, 196 Ariz. 324, 996 P.2d 125 (App. 2000), and *Pima County No. J-103621-01*. But in those cases, the state presented no evidence that the officer had known, by its feel, that the item was contraband. *Valle*, 196 Ariz. 324, ¶ 12, 996 P.2d at 129; *Pima County*

---

[3]At the suppression hearing, however, defense counsel appeared to concede South had probable cause before reaching into Ahumada's pocket.

11

*No. J-103621-01*, 181 Ariz. at 376, 378, 891 P.2d at 244, 246. And, under conditions similar to those in this case, other courts have held an officer had probable cause to seize contraband from inside a suspect's clothing based on the feel of the contraband and the other surrounding circumstances. *See, e.g.*, *United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994) (plain-feel doctrine permitted seizing drugs from inside defendant's pant leg when officer felt bulges on defendant's ankles "like hard, compact packages" and officer "aware of the objects' incriminating character" based, in part, on experience as drug enforcement officer at airport); *Doctor v. State*, 596 So. 2d 442, 445 (Fla. 1992) (seizure of cocaine lawful because totality of circumstances gave officer probable cause to believe defendant carrying crack cocaine in groin area); *State v. Rushing*, 935 S.W.2d 30, 33 (Mo. 1996) (finding totality of circumstances gave officer probable cause to reach into suspect's pocket and seize container holding cocaine); *Commonwealth v. Johnson*, 631 A.2d 1335, 1340-41 (Pa. Super. Ct. 1993) (officer's tactile impression and years of experience "combined sufficiently to betray the illegal nature of the object on appellee's person," giving officer probable cause to seize); *State v. Guy*, 492 N.W.2d 311, 318 (Wis. 1992) (officer's seizure of cocaine from defendant's pocket lawful when "[w]hat she felt and what she knew at the time she felt it" provided probable cause to believe bulge in pocket connected to criminal activity).

**Disposition**

¶20    We conclude the trial court was legally correct in denying Ahumada's motion to suppress evidence.  Accordingly, we affirm his convictions and sentences.


/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Judge


CONCURRING:


/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge


/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge