NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

LAWRENCE JAMAAL WATSON, *Appellant*.

No. 1 CA-CR 13-0821
FILED 5-26-2015

Appeal from the Superior Court in Maricopa County
No.  CR2012-152876-001
The Honorable Sherry K. Stephens, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry Reid
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Donn Kessler joined.

**T H U M M A**, Judge:

¶1        Lawrence Jamaal Watson appeals from his convictions and resulting sentences for possession of narcotic drugs, resisting arrest and aggravated assault, arguing his constitutional rights were violated when a police officer opened an opaque film canister that contained crack cocaine during a consensual search. Because Watson has shown no reversible error, his convictions and resulting sentences are affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

¶2        In 2012, Watson was charged with possession or use of narcotic drugs, a Class 4 felony (Count 1); resisting arrest, a Class 6 felony (Count 2); aggravated assault, a Class 5 felony (Count 3) and aggravated assault of a peace officer, a Class 3 felony (Count 4). Watson was on release leading up to, and at, trial. After Watson failed to appear for trial, the court issued a bench warrant. Because Watson had been advised of the trial date in open court, the court found Watson "knowingly, intelligently and voluntarily chose to absent himself from these proceedings" and proceeded with the June 2013 trial in absentia.

¶3        The trial evidence showed Officers Montoya and Siljander were providing off-duty security at an apartment complex in West Phoenix. While patrolling, Officer Montoya encountered Watson but did not recognize him as a tenant. Officer Montoya asked Watson if he would accompany her to the apartment office to determine whether the friend he was allegedly visiting was a tenant. Watson agreed and walked back towards the office with her. During the walk to the apartment office, Officer

---

[1] On appeal, this court views the evidence in the light most favorable to sustaining the conviction and resolves all reasonable inferences against defendant. *State v. Karr*, 221 Ariz. 319, 320 ¶ 2, 212 P.3d 11, 12 (App. 2008).

Montoya testified Watson appeared nervous, was fidgeting, sweating profusely and constantly looking back and forth.

¶4         Once in the office, Officer Montoya asked Watson, "you don't have anything we need to worry about, you don't have guns, drugs, knives, grenades, anything like that on you?" Watson answered "no, let me show you." Watson then handed her a variety of items, including a lighter, some paper, and a small, opaque white film canister that made a rattling sound. Officer Montoya testified that the container was the sort often used to hold drugs.

¶5         Officer Montoya shook the canister and examined it. Watson said nothing but began walking toward the door. Officer Montoya then opened the container, saw rocks of crack cocaine and commented "you got a little crack there." Watson then ran toward the door. Officer Montoya told Officer Siljander, who had just walked into the office, to restrain Watson. Officer Montoya managed to slam the office door shut before Watson could escape. Watson threw a wild punch at Officer Montoya, but missed.

¶6         By this time, Officer Siljander had grabbed Watson from behind in a bear hug. During a subsequent struggle, Officer Siljander and Watson fell to the floor. Ultimately, Officer Montoya used Officer Siljander's flashlight to strike Watson. One strike hit Watson in the head but Watson continued to struggle. After about a minute of struggling, Officer Siljander testified that he felt Watson tugging on his holster, so he alerted Officer Montoya that Watson was "going for [his] gun." Officer Montoya drew her gun and placed it to Watson's head. Watson then stopped struggling, said "I'm done" and was taken into custody.

¶7         After being read his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), Watson agreed to speak with police officers. Watson said he found the drugs in an alley and had been rolling pieces of the crack rocks into cigarettes to smoke. Watson admitted that he was under the influence of the drug when he assaulted the officers.

¶8         The jury found Watson guilty on Counts 1–3 and not guilty on Count 4. On August 8, 2013, officers arrested Watson in Illinois and he was transported to Arizona. The superior court sentenced Watson to 4.5 years in prison for the possession conviction; 2 years in prison for resisting arrest and 3 years in prison for aggravated assault, all imposed concurrently and with credit for 130 days of presentence incarceration. Watson filed a timely appeal from his convictions and resulting sentences.

## DISCUSSION

### I.      This Court Has Jurisdiction Over This Appeal.

¶9        The State contends this court lacks jurisdiction based on Watson's absconding and the resulting delay in sentencing. "A defendant may not appeal" a "final judgment of conviction . . . if the defendant's absence prevents sentencing from occurring within ninety days after conviction and the defendant fails to prove by clear and convincing evidence at the time of sentencing that the absence was involuntary." Ariz. Rev. Stat. (A.R.S.) § 13-4033(C) (2015).[2] Watson failed to appear at trial and, as a result of his absconding, sentencing did not occur until 141 days after his conviction. There is no indication in the record or on appeal that Watson's absence was involuntary.

¶10       A criminal defendant's constitutional "right to appeal in all cases," Ariz. Const. art. 2, § 24, is subject to forfeiture, including by waiver, *see* A.R.S. § 13-4033(C). Such waiver, however, must be knowing, voluntary and intelligent, with such an inference properly drawn "only if the defendant has been informed he could forfeit the right to appeal if he voluntarily delays his sentencing for more than ninety days." *State v. Bolding*, 227 Ariz. 82, 88 ¶ 20, 253 P.3d 279, 285 (App. 2011). As applied, there is no indication Watson was told about the possible waiver of his right to appeal if he failed to attend trial. Accordingly, the record does not support a finding that Watson properly waived his right to appeal by absconding, meaning this court has jurisdiction over his timely appeal pursuant to the Arizona Constitution, Article 6, Section 9, and A.R.S. §§ 12-120.21(A)(1), 13-4031 and -4033(A)(1).

### II.     Watson's Fourth Amendment Rights Were Not Violated.

¶11       Watson argues Officer Montoya violated his constitutional rights by opening the film canister Watson had given her. Watson admits that he did not raise his Fourth Amendment challenge with the superior court, meaning review on appeal is limited to fundamental error. *See* Ariz. R. Crim. P. 21.3(c); *State v. Henderson*, 210 Ariz. 561, 567 ¶¶ 19–20, 115 P.3d 601, 607 (2005). "Accordingly, [defendant] 'bears the burden to establish that "(1) error exists, (2) the error is fundamental, and (3) the error caused

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

him prejudice.'"'" *State v. James*, 231 Ariz. 490, 493 ¶ 11, 297 P.3d 182, 185 (App. 2013) (citations omitted).

¶12            The Fourth Amendment prohibits unreasonable searches and seizures by the government. *See* U.S. Const. amend. IV; *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). A warrantless search is reasonable, and thus constitutional, if the suspect consented to the search. *Jimeno*, 500 U.S. at 251. "It is well established that 'the scope of a consent search is limited by the breadth of the actual consent.'" *State v. Swanson*, 172 Ariz. 579, 583, 838 P.2d 1340, 1344 (App. 1992) (citation omitted). The scope of consent is an objective test determined by asking what the typical reasonable person would have understood by the exchange between the officer and the suspect. *Jimeno*, 500 U.S. at 251; *State v. Ahumada*, 225 Ariz. 544, 546 ¶ 7, 241 P.3d 908, 910 (App. 2010).

¶13            Here, when he was not in police custody, Watson voluntarily accompanied Officer Montoya to the apartment office. Once in the office, Officer Montoya asked Watson "you don't have guns, drugs, knives, grenades, anything like that on you?" Thus, the scope of the consent search would be "limited by the items about which the officer inquired as a predicate to the search." *Swanson*, 172 Ariz. at 583, 838 P.2d at 1344. In response, Watson answered "no, let me show you" and voluntarily handed Officer Montoya a variety of items, including the film canister holding the crack cocaine.

¶14            Watson's verbal response, accompanied by the physical act of handing the items to the officer, was "clear and positive evidence" of consent "in unequivocal words" and deeds. *See State v. Lynch*, 120 Ariz. 584, 586, 587 P.2d 770, 772 (App. 1978) (holding defendant's answer that his driver's license was in glove compartment gave consent for officers to search there); *State v. Ballesteros*, 23 Ariz. App. 211, 214, 531 P.2d 1149, 1152 (1975) (finding partially opening a trunk in response to an officer's request constituted consent to search the trunk). Officer Montoya could reasonably have interpreted Watson's statements and actions in response to her question about drug possession as giving consent for her to open the canister. Furthermore, Watson did not object during the few seconds that passed when Officer Montoya examined and shook the canister, providing additional evidence of consent. *See Lynch*, 120 Ariz. at 586, 587 P.2d at 772. Accordingly, Watson has not shown error or a violation of his constitutional rights.

¶15 Even if the evidence was obtained and admitted in error, which it was not, Watson has not shown that the error was fundamental or that it resulted in prejudice. After being read his *Miranda* rights, testimony during trial showed Watson admitted to possessing and using the drugs the day of the incident. Accordingly, Watson has not shown fundamental error or resulting prejudice from the admission of the evidence obtained from the film canister.

## CONCLUSION

¶16 Because Watson has shown no reversible error, his convictions and resulting sentences are affirmed.



**Ruth A. Willingham** · **Clerk of the Court**
**FILED**: ama