ECKERSTROM, Chief Judge,
dissenting:
¶ 24 A person’s general consent to a search, during a routine traffic stop, neither foreseeably nor reasonably includes an expectation that a dog will be invited into the interior of one’s vehicle. Therefore, the state was obliged here to demonstrate that Becerra waived her Fourth Amendment right to protection from such an additional intrusion. Because Becerra had no legal duty to object to a search exceeding the scope of her consent, and because she could not divine the officer’s unspoken intention to ultimately invite the dog inside her car even if she possessed such a duty, I cannot agree that her mere silence sufficed to demonstrate her consent to that intrusion.
¶25 When an officer conducts a search pursuant to consent, “[t]he scope of [that] search is generally defined by its expressed object.” Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). If an officer has not provided any express purpose for the search, the consent is understood as a general and unqualified consent. United States v. Snow, 44 F.3d 133, 135 (2d Cir.1995). In that context, a defendant’s failure to object to an action that would reasonably be perceived as part of the general search may be taken as consent. See United States v. Starr, 533 F.3d 985, 996 (8th Cir. 2008); United States v. Gordon, 173 F.3d 761, 766 (10th Cir.1999); Guy v. State, 913 A.2d 558, 563-64 (Del.2006).
¶ 26 But a general consent is not without limits. A general consent “is constrained by the bounds of reasonableness: what a police *97 officer could reasonably interpret the consent to encompass.” United States v. Strickland, 902 F.2d 937, 941 (11th Cir.1990). Courts have found that a general consent does not encompass a search that destroys property, see United States v. Osage, 235 F.3d 518, 521-22 (10th Cir.2000); Strickland, 902 F.2d at 941-42, or that is overly invasive of a person’s bodily privacy. See United States v. Blake, 888 F.2d 795, 800 (11th Cir.1989).
¶ 27 I would conclude that the use of a dog to search the interior of a ear falls outside the scope of a general consent to a search, at least in the absence of some circumstances that would put a reasonable person on notice at the time consent is given that a dog might be so used. See State v. McLeod, 664 So.2d 983, 984-85 & 984 n. 1 (Fla.Dist.Ct.App.1995). As the majority has correctly noted, the scope of consent is defined by what a reasonable person would have understood the consent to mean. Jimeno, 500 U.S. at 251, 111 S.Ct. 1801. The state contends the use of a dog was analogous to any other tool that an officer might use in conducting a search, such as a flashlight, and therefore required no separate consent. In apparent accord with this analogy, the majority observes that dogs are frequently and openly used as a tool by law enforcement in a number of contexts.
¶ 28 But, in addressing the Fourth Amendment issue before us, the pertinent question is not whether flashlights and dogs bear some analogy as law enforcement tools. Rather, we must address whether a reasonable person would expect, under the totality of the circumstances here, for her general consent to permit the additional intrusion of a dog into her car. The encounter here occurred neither at a border checkpoint nor at an airport, where police dogs are commonly encountered, but rather in a parking lot as part of a routine traffic stop. The officer inquired only whether he could search the car; he neither suggested the object of the search nor that an animal would be used as part of it. Most importantly, the state has presented no evidence suggesting that, at the time the consent was given, Becerra had any awareness that the officer intended to use a dog or that a dog was even present at the scene.[6]
¶ 29 In this context, I cannot agree that a reasonable person would expect that a dog would be deployed to search inside her car during a routine traffic stop. Nor can I agree that a reasonable person would consider a dog search to involve no greater level of intrusion than a flashlight. Indeed, there are multiple reasons that a reasonable person might consent to the intrusion of a human officer with a flashlight but refuse entry to a dog. Flashlights neither shed, drool, nor leave scratches in upholstery. Unlike flashlights, many people have an allergy to, or fear of, a dog. And, even those who allow their own familiar pet to travel in their vehicle have reasonable grounds to display a more cautious attitude towards strange dogs. Such considerations lead reasonable people, in their ordinary lives, to understand that an invitation to a person does not extend to that person’s dog. See, e.g., Abigail Van Burén, Friend’s Dog Is Off the Guest List for Dinner Parties, Dear Abby (Oct. 24, 2015), http://www.uexpress.com/dearabby/2015/10/ 24/volunteering-with-infants-may-gratify-wannabe. Although the majority contends that only an unreasonable person would be uncomfortable with a strange animal entering her private space, dogs are commonly prohibited from entering restaurants, private businesses, shopping malls, and the interior of public buildings.
¶ 30 Neither the state nor the majority has cited any case concluding that a general consent to search a vehicle includes the use of a dog. Pertinent jurisprudence suggests otherwise. It is undisputed that a general consent to search a vehicle or home does not include consent to damage property therein. See Osage, 235 F.3d at 521-22; Strickland, 902 F.2d at 941-42. Yet dogs pose an inherent and foreseeable risk of doing precisely that. The canine propensity for destruction of property is so well known that “my dog ate it” is a clichéd excuse for failure to *98 complete schoolwork. See Barbara J. Brunner, Before They Even Start: Hope and Incoming lLs, 48 Duq. L. Rev. 473, 489 (Spring 2010); see also Steven R. Selsberg & Maelissa Brauer Lipman, “My Dog Ate It": Spoliation of Evidence and the Texas Supreme Cowit’s Ortega Decision, 62 Tex. B.J. 1014, 1014 (Nov. 1999). A dog search inside a vehicle necessarily involves four active paws in a confined space, with the attendant risks of trampling important papers, electronic equipment, or freshly dry-cleaned clothes. And, a dog will predictably both explore the enticing smells of any food being transported and leave behind its hair and dander.
¶ 31 Moreover, each pertinent ease cited by the majority has emphasized circumstances that would alert the defendant that use of a dog was contemplated in the requested search. This reasoning suggests a threshold conclusion that a dog is not otherwise included in a general consent to search. See United States v. Gonzalez-Basulto, 898 F.2d 1011, 1013 (5th Cir.1990); United States v. Woods, 445 F.Supp.2d 1328, 1332-33 (M.D.Ala.2006); State v. Paredes, 167 Ariz. 609, 613, 810 P.2d 607, 611 (App.1991); cf. Florida v. Jardines, — U.S.-,-, 133 S.Ct. 1409, 1415-16, 185 L.Ed.2d 495 (2013) (officer accompanied by trained narcotics dog exceeds implied consent for officer alone to enter curtilage); Dominguez v. State, 616 So.2d 506, 506-07 (Fla.Dist.Ct.App.1993) (consent to search of home by officers did not include consent for use of dog).[7] I would therefore expressly hold that a general consent to a vehicle search, pursuant to a routine traffic stop, does not include an invitation to have a dog enter the vehicle unless the circumstances demonstrate, at the time consent is given, that the search would involve such an additional intrusion.[8]
¶ 32 For this reason, Becerra’s general consent to allow the officer to search her car did not provide the officer license to usher a dog into her vehicle. We thus must consider whether any of her actions thereafter expanded her consent to allow it.
¶ 33 As a threshold matter, the state has the burden of showing that a search was within the scope of consent. State v. Ahumada, 225 Ariz. 544, ¶ 14, 241 P.3d 908, 912 (App.2010). If a search exceeds the original scope of consent, or exceeds the boundaries of what a reasonable person would have believed they were consenting to, a defendant who fails to object does not thereby demonstrate consent to the expanded scope of the search. See United States v. Cotton, 722 F.3d 271, 274, 277 (5th Cir.2013); United States v. Neely, 564 F.3d 346, 350-51 (4th Cir.2009); Osage, 235 F.3d at 521-22; United States v. Wald, 216 F.3d 1222, 1228 (10th Cir.2000); Strickland, 902 F.2d at 941-42. This principle, uneontested in our law, resolves the case before us. The state offers only Becerra’s failure to object to the dog’s entry into her ear as grounds for demonstrating her consent.
¶34 As the majority correctly observes, circumstances present at the time consent is given may allow an inference that the consent includes the use of a dog. See Gonzalez-Basulto, 898 F.2d at 1013; Paredes, 167 Ariz. at 613, 810 P.2d at 611. And, circumstances occurring after consent is given might arguably illustrate that the suspect originally consented to the use of a dog.[9]
*99 ¶ 35 In Woods, 445 F.Supp.2d at 1332-33, the court reasoned that because the defendant was aware that the police officers were looking for drugs, and the defendant spent “some time” talking with the dog-handler before the search began, the defendant was “aware ... of the dog’s presence and its purpose” when he provided consent. Here, the majority takes this principle a step further in concluding that a person’s mere failure to object when a dog appears on the scene after consent is given demonstrates that a person intended to consent to a dog search. But, as discussed, mere silence does not generally demonstrate consent as a matter of law and suspects have no duty to narrow or limit a search exceeding the original consent provided. See Osage, 235 F.3d at 521-22; Strickland, 902 F.2d at 941-42. Rather, the state possessed the affirmative duty to demonstrate that the suspect has agreed to this expansion. See Ahumada, 225 Ariz. 544, ¶ 14, 241 P.3d at 912.
¶ 36 Most importantly, the majority’s conclusion—that a person’s mere silence during a search implicitly authorizes police to go beyond the boundaries of what a reasonable person would have expected the search to entail—overlooks the practical realities of a police encounter involving a search.
¶ 37 Here, at the time Becerra gave consent to the search, nothing in the record supports a finding that she was aware the dog was present. The dog did not exit the officer’s vehicle until after Becerra signed the consent form. Nor did the officer testify that his pati’ol car was marked as a “K-9” unit or that the dog would have necessarily been visible to Becerra. And after consent was given, the record shows nothing but Becerra’s silence as the search was conducted.
¶ 38 That Becerra was advised she had the right to withdraw or revoke her consent does not change the calculus. The advisory did not confer upon the officer the right to unilaterally expand upon the consent secured. Nor did the advisory suggest the search would include a dog within her vehicle or that she had any right to oversee the search once it began. To the contrary, Becerra was instructed to stand twenty feet away from her car as the search occurred. Put another way, the advisory alerted Becerra that she possessed the hypothetical power to revoke the search, but it failed to advise her that she had the affirmative obligation to revoke or limit the search if it exceeded her understanding of the consent she had provided. An advisory that a person has a right to terminate a general search does not inform a reasonable person what the search will encompass. See Jimeno, 500 U.S. at 251, 111 S.Ct. 1801; Strickland, 902 F.2d at 941.[10]
¶ 39 This controlling principle—that mere silence does not equate with consent—is consistent with the “practical realities” of law enforcement. Wyoming v. Houghton, 526 U.S. 295, 306, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999). An officer conducting a search has unique knowledge of what he intends the search to entail and is in the best position to clarify any ambiguities. See United States v. Infante-Ruiz, 13 F.3d 498, 505 (1st Cir.1994). And, it imposes little burden on an officer intending to deploy a dog inside a vehicle to clarify that intention to the vehicle’s owner.
¶ 40 In addition, suspects are typically removed from the near vicinity of searches for officer safety reasons, as Becerra was here, and are not usually able to oversee the search sufficiently to object to any expansion of its scope. See Arizona v. Gant, 556 U.S. 332, 362, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (Alito, J., dissenting) (noting law enforcement practice of securing defendants away from vehicle during search incident to arrest). Reasonable people are understandably reluctant to interrupt an officer who is actively conducting a search. For Becerra, that would have required her to either violate the officer’s order to stand twenty feet away or to raise her voice to him.
*100 ¶41 The majority reasons Becerra was placed on notice that the officer intended to exceed the scope of a general consent when he ushered his dog around the exterior of her car. I cannot agree that a reasonable person would necessarily draw that conclusion. Police dogs are commonly used to search the exterior of vehicles and packages without intruding inside those effects. And the state needs no consent or cause to conduct a dog sniff on a vehicle’s exterior. See Illinois v. Caballes, 543 U.S. 405, 409-10, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). For this reason, an officer’s use of a dog around the exterior of a vehicle, an event which implicates no recognized privacy interest, see id., does not objectively demonstrate that an officer intends to invite the animal inside the car.[11] Thus, when an officer brings a dog around the exterior of a vehicle, a reasonable person has no way of determining whether the officer intends to stop there, as police routinely do, or invite the dog inside the car.
¶ 42 The majority apparently accepts the state’s reasoning that Becerra could have objected during the twenty seconds between when the dog first began walking around her car and when it entered. But she was not placed on notice of the officer’s intentions until the moment the officer invited the dog into the car. The record is wholly silent as to whether the officer verbally directed the dog to enter or merely so signaled. It is therefore possible that Becerra had no notice the dog would enter her car until it had already done so.
¶ 43 In short, both our jurisprudence, which prohibits the state from claiming it has secured consent from a suspect’s mere silence, and the practicalities of the encounter, wherein the officer alone knows how he intends to deploy his dog, logically place the burden on the officer to clarify the scope of consent. Because the majority’s holding bluntly shifts that burden to the suspect, I cannot join in its novel reasoning. To the extent Paredes can be read to impose on the suspect a duty to object or inquire, that case does not conform to settled jurisprudence.
¶44 In sum, no circumstances existed at the time Becerra gave consent that would support an inference such consent included permission to search the inside of her vehicle with a dog. The state marshalled no evidence, other than her silence, that she agreed to expand the scope of her general consent to include that intrusion. Accordingly, I would conclude the state failed to meet its burden of demonstrating Becerra’s consent to the dog’s entry into her vehicle.

. The majority observes many vehicles containing dogs are visibly marked as ’’K-9” units. Nothing in the record suggests that the officer’s car here was so marked. We therefore cannot consider that possibility among the totality of the circumstances in evaluating the scope of consent.

. The majority suggests Jardines and Dominguez are inapposite because they both involved searches of homes, a context wherein privacy rights are elevated. But those cases are premised on the assumption that dogs involve a greater level of intrusion than an officer alone.

. Contrary to the suggestion of the majority, this approach, which focuses on the circumstances at the time consent is given, does not erect a bright-line rule requiring an officer to expressly convey his intention to invite a police dog into a vehicle.

. Although the reasoning of several cases cited by the majority suggests that a person's actions subsequent to granting consent can be used to demonstrate the scope of consent, that approach arguably contradicts the objective reasonable person standard set forth in Jimeno, 500 U.S. at 251, 111 S.Ct. 1801. As the Court has emphasized, that standard is objective because it "allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment ... [and] ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual.” Michigan v. Chesternut, 486 U.S. 567, 574, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). However, because I conclude that Becerra’s post-consent actions would not at any rate demonstrate consent, and because those actions are at the center of the majority’s reason *99 ing, I assume arguendo that such circumstances may be considered.

. Officers are not required to advise a defendant that consent to a search can be revoked. See United States v. Drayton, 536 U.S. 194, 206, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002). The majority opinion does not address whether a person's mere silence expands the scope of consent when an officer provides no such advisory.

. Because an exterior sniff invades no privacy interest, a person generally has no basis to object to a dog sniff of the outside of her vehicle. See Caballes, 543 U.S. at 409-10, 125 S.Ct. 834. I do not suggest with this observation that "a K-9 exterior sniff eliminates a person's ability to withdraw her consent.” Supra ¶ 19. I contend only that a person’s lack of objection to a dog sniff of a vehicle's exterior does not demonstrate acquiescence to a dog search inside of a vehicle—an event which, by contrast, does implicate a privacy interest.